IRMA YOLANDA GUZMAN,                    §
                                        §
          Plaintiff,                    §
                                        §
v.                                      §          NO. EP-17-CV-312-MAT
                                        §
NANCY A. BERRYHILL,                     §
ACTING COMMISSIONER OF THE              §
SOCIAL SECURITY ADMINISTRATION,         §
                                        §
          Defendant.                    §

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to

42 U.S.C. § 405(g). Plaintiff Irma Yolanda Guzman ("Plaintiff") appeals from the decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for a period of disability and disability insurance benefits ("DIB") under Title II of the Social

Security Act ("the Act"). (Pl.'s Compl., ECF No. 5, at 1). The parties consented to the transfer of

the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court

Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff was sixty-one years old at the time of the decision of the Administrative Law

Judge ("ALJ"), dated March 1, 2017. (R. 31, 193).[1] Her job experience included work as a cashier

and a hand packager. (R. 30, 73–74, 227). On September 19, 2014, Plaintiff filed an application

for a period of disability and DIB, in which she alleged disability beginning on May 22, 2012. (R.

193). Plaintiff alleged disabling impairments of arthritis, herniated discs in the lumbar spine, and

---

[1] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

1

depression and anxiety. (R. 103, 104). After her application was denied initially and upon reconsideration, Plaintiff requested a hearing by an ALJ. (R. 79–88, 89–102, 133–36).

On October 25, 2016, a hearing was conducted before the ALJ. (R. 52–78). At the hearing, the alleged disability onset date was amended to February 17, 2015. (R. 65). On March 1, 2017, the ALJ issued a written decision denying benefits on the ground that Plaintiff was capable of performing her past relevant work as a cashier. (R. 20–31). On August 15, 2017, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–7).

In this appeal, Plaintiff raises two issues: (1) that the ALJ applied the incorrect severity standard as it relates to Plaintiff's mental impairments and (2) that the ALJ's RFC finding is not supported by substantial evidence. (Pl.'s Br., ECF No. 20, at 2–3).

## II.    LAW & ANALYSIS

### A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). Substantial evidence "is such relevant evidence as a reasonable mind might accept to support a conclusion" and is more than a scintilla, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan*, 38 F.3d at 236; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983))

2

(internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

B. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, "disability" means, in relevant part, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This means that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

*Id.* at § 423(d)(2)(A)

The Social Security Administration Regulations (the "Regulations") prescribe a "five-step sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R.

3

§ 404.1520(a)(1). If, at any step of the process, the ALJ finds that the claimant is either disabled or not disabled, the ALJ will make her determination as to disability and will not continue with a consideration of the remaining steps. *Id.* at § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* at § 404.1520(a)(4)(i). If so, the ALJ will find the claimant is not disabled and will not continue to step two. *Id.* At the second step, the ALJ considers the medical severity of the claimant's impairment(s). *Id.* at § 404.1520(a)(4)(ii). If the ALJ determines that the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meet the duration requirement, then the ALJ will find that the claimant is not disabled and will not continue to step three. *Id.*

At the third step, the ALJ also considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at § 404.1520(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.*

Before proceeding to the fourth step, the ALJ will make a finding as to the claimant's residual functional capacity ("RFC"), "based on all the relevant medical and other evidence" in the administrative record. *Id.* at § 404.1520(e). A claimant's RFC is the most she can still do despite her physical and mental limitations that affect what she can do in a work setting. *Id.* at § 404.1545(a)(1). When assessing the RFC, the ALJ will consider *all* of a claimant's medically determinable impairments, not just ones that the ALJ determines are severe. *Id.* at § 404.1545(a)(2).

At step four of the five-step sequential evaluation process, the ALJ considers the RFC assessment and the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv). If the ALJ

4

determines that, considering the RFC, the claimant can still do her past relevant work, then the ALJ will find that the claimant is not disabled and will not continue to step five. *Id.* Finally, at step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at § 404.1520(a)(4)(v). If the ALJ finds that the claimant cannot, then the ALJ will find that the claimant is disabled. *Id.*

### C. THE ALJ'S WRITTEN DECISION

In her written decision, the ALJ analyzed Plaintiff's application for disability using the five-step sequential evaluation process set forth in the Regulations. (R. 21). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 17, 2015, the alleged onset date. (R. 22). Proceeding to step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and osteoarthritis. (R. 22). The ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety were not severe impairments, singly and in combination, because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. 23).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). The ALJ specifically considered Listing 1.04, disorders of the spine, and Listing 14.09 relating to Plaintiff's arthritis. (R. 24). Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(c):

> except that [she] can lift and carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] can stand and/or walk about six hours in an eight-hour workday, and she can sit about six hours in an eight-hour workday. [Plaintiff] can occasionally climb ramps and stairs, but she can never climb ropes, ladders, or scaffolds. [Plaintiff] can occasionally kneel, stoop, and crouch, and she can frequently

handle, finger, and feel with the bilateral hands.

(R. 25). At step four, the ALJ concluded that Plaintiff can perform her past relevant work as a cashier because such work "does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (R. 30). Accordingly, the ALJ determined that Plaintiff was not disabled and, therefore, did not proceed to step five. (R. 31).

### D. THE ALJ DID NOT APPLY THE PROPER LEGAL STANDARD AT STEP TWO OF THE SEQUENTIAL EVALUATION PROCESS BUT SUCH ERROR IS HARMLESS

Plaintiff argues that the ALJ failed to apply the correct severity standard for Plaintiff's mental impairments of depression and anxiety at step two and thereafter failed to include mental restrictions in the RFC finding. (Pl.'s Br., ECF No. 20, at 3). According to Plaintiff, the Fifth Circuit has held that an impairment must be found to be severe at step two of the sequential evaluation process even if it has only minimal interference on a claimant's ability to work. *Id.* at 4 (citing *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805–06 (N.D. Tex. 2009)). Therefore, according to Plaintiff, the ALJ erred by finding that Plaintiff's depression and anxiety were not severe impairments because "they do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities." *Id.* (quoting R. 23) (internal quotation marks omitted). Plaintiff claims that in support of this finding, the ALJ "erroneously relie[d]" on her analysis under a standard that was not appropriate for a step-two analysis, and therefore, failed to apply the proper severity standard. *Id.* Plaintiff further claims that failure to apply the correct standard is legal error, which, according to Plaintiff, leaves the Court with no option but to remand the matter to the Commissioner for reconsideration. *Id.* (citing *Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir. 1985)).

In response, the Commissioner contends that the ALJ did not err because she both stated and applied the correct severity standard in the Fifth Circuit and per the Regulations, including

applying the "special psychiatric review technique" at step two. (Comm'r's Br., ECF No. 23, at 5–8). Furthermore, the Commissioner contends that an ALJ's error in articulating the severity standard does not require remand where substantial evidence supports the ALJ's determination that the impairment was not severe. *Id.* at 6–7. According to the Commissioner, "objective medical findings and observations in the record" constitute substantial evidence to support the ALJ's determination that Plaintiff's mental impairments were not severe. *Id.* at 3–5.

As set forth in her written decision, the ALJ found that Plaintiff had severe physical impairments but no severe mental impairments. (R. 22–24). The Regulations describe a "severe impairment" as one that *significantly* limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Fifth Circuit, however, has determined that this standard is not in accord with the statute defining disability. *Stone*, 752 F.2d at 1103–05.

In *Stone v. Heckler*, the Fifth Circuit considered the appeal of a denial of disability based on the ALJ's determination at step two of the five-step sequential evaluation process that the plaintiff did not have a severe impairment as defined by the Regulations. 752 F.2d at 1100. In finding for the appellant, the Fifth Circuit determined that the construction of "severe impairment" in the Regulations is inconsistent with the statute because it would allow the Commissioner to deny benefits to individuals who would otherwise be found disabled under the statute. 752 F.2d at 1104–05. Citing its previous line of cases setting the same standard for determining whether a claimant's impairment is severe, the Fifth Circuit reiterated its construction of the severity regulation that: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (citing

*Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984); *Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984); *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984)).

Particularly noting its "recent experience with cases where the disposition has been on the basis of nonseverity," the Fifth Circuit stated that it will "in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106. The Fifth Circuit stated that "[u]nless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration." *Id.*

After *Stone*, the Social Security Administration issued a ruling, entitled "Titles II and XVI: Medical Impairments That Are Not Severe," that "interprets and clarifies the current policy on not severe impairment[ and] describes the threshold intended . . . ." SSR 85-28. Specifically, the ruling states that this policy is consistent with *Stone* and quotes the Fifth Circuit's construction, set forth *supra*. *Id.* The ruling subsequently sets forth the policy that:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or physical or mental ability(ies) to perform basic work activities).

*Id.* This policy, therefore, allows for an impairment to be found "not severe" where there is minimal effect on an individual's ability to work.

In her written decision, the ALJ quotes the *Stone* construction but cites the Social Security ruling. (R. 21, 22) ("A medically determinable impairment is not severe if it is only 'a slight abnormality which has such a minimal effect on the individual that it would not be expected to

interfere with the individual's ability to work irrespective of age, education, or work experience' (SSR 85-28)."). However, in finding Plaintiff's mental impairments not severe, the ALJ tracks the language of the standard set forth in Social Security Ruling 85-28. (R. 23) ("The claimant's medically determinable mental impairments of depression and anxiety . . . do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."). Thus, the ALJ appears to have quoted the language from *Stone* as the legal standard, but based her finding on the language from the Social Security ruling. The first issue before the Court, therefore, is whether the standard set forth in SSR 85-28 is consistent with the *Stone* standard.

This very issue has been the source of considerable judicial disagreement. *See Mills v. Berryhill*, No. 4:16-CV-0331-Y-BL, 2017 WL 3972009, at *4 (N.D. Tex. Aug. 3, 2017) (collecting cases) report and recommendation *adopted by* 2017 WL 3891391 (N.D. Tex. Sept. 6, 2017). One line of cases concludes that the two standards are not consistent because the *Stone* standard requires an impairment to be classified as severe if it has *any* effect on a claimant's ability to work. *See e.g., Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work."); *Padalecki v. Astrue*, 688 F. Supp. 2d 576, 580 (W.D. Tex. 2010) ("*Stone* does not allow for any interference with work ability, not even minimal interference." (citing *Scroggins*, 598 F. Supp. 2d at 805)); *Hitchcock v. Berryhill*, No. 3:17-CV-3164-BH, 2019 WL 1128866, at *8 (N.D. Tex. Mar. 12, 2019) ("*Stone* provides no allowance for a minimal interference with a claimant's ability to work."). The other line of cases holds that the two standards are not inconsistent, considering Fifth Circuit jurisprudence as a whole. *See Acosta v. Astrue*, 865 F. Supp. 2d 767, 781–82 (W.D. Tex. 2012) (reviewing Fifth Circuit opinions prior to, and after, *Stone* in which the Fifth Circuit described the

9

standard as a slight abnormality with minimal effect on the ability to work and concluding that the Fifth Circuit "has all along viewed [the *Stone*] standard as providing an allowance for a minimal effect on ability to work without also rendering the impairment severe."); *Mills*, 2017 WL 3972009, at *4–9 (reviewing the history of the judicial disagreement and recommending "join[ing] the growing list of courts to find that the minimal effect standard satisfies *Stone*").

Recently, however, noting that "[s]evere impairment has a specific–if somewhat surprising–meaning," the Fifth Circuit reiterated the *Stone* standard as its "binding precedent" that "'[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)) (emphasis in original). "Re-stated, an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work.'" *Id.* (quoting *Loza*, 219 F.3d at 391). Comparing this restatement of the standard to that set forth in Social Security Ruling 85-28, a finding of non-severity in the latter standard includes impairments that would be expected to have "minimal effect on an individual's ability to work." SSR 85-28. Furthermore, as applied in the instant case, the ALJ seems to have expected that Plaintiff's mental impairments could interfere with her ability to work by stating that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. 23). Therefore, the Court finds that the standard set forth in Social Security Ruling 85-28, as applied in the instant case, does not comport with the *Stone* standard.

Accordingly, because the ALJ's finding allowed for an expectation of up to minimal limitation in Plaintiff's ability to perform basic mental work activities, the Court finds that the ALJ did not apply the proper legal standard, and therefore erred.

Finding error, the Court must next determine whether failure to apply the *Stone* standard requires the Court to remand without further inquiry or whether a harmless error analysis is appropriate. Plaintiff contends that "[t]he ALJ's failure to apply the correct standard constitutes legal error, not procedural error, leaving the court no discretion to determine whether such error is harmless." (Pl.'s Br., ECF No. 20, at 4). In support, Plaintiff contends that the Fifth Circuit in *Stone* mandated remand to the Commissioner for reconsideration where the *Stone* standard is not used. *Id.* The Commissioner argues that remand is not required because the ALJ's finding that the impairment is not severe is supported by substantial evidence. (Comm'r's Br., ECF No. 23, at 3–8).

In *Stone*, the Fifth Circuit considered an appeal from the denial of benefits at step two where the ALJ found that the plaintiff did not have a severe impairment. 752 F.2d at 1100. When undertaking its consideration, as discussed *supra*, the Fifth Circuit noted the recent cases in which the denial of benefits was made at step two on grounds of non-severity. *Id.* at 1101. The Fifth Circuit again referred to its "recent experience with cases where the disposition has been on the basis of nonseverity" in its conclusion before it stated that "[u]nless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration." *Id.* at 1106.

Although some courts have concluded that this statement requires remand in all cases, *see e.g., Padalecki*, 688 F. Supp. 2d at 581; *Scroggins*, 598 F. Supp. 2d at 806–07, other courts, including the Fifth Circuit, have undertaken a harmless error analysis where the ALJ proceeded past step two of the five-step sequential evaluation process. *See e.g., Anthony v. Sullivan*, 954 F.2d

11

289, 294 (5th Cir. 1992) ("*Stone* merely reasons that the regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality."); *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) ("[T]his case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work. Therefore, the ALJ's failure to assess the severity of Herrera's anxiety or learning impairments at step two is not a basis for remand. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.")."); *Murphy v. Berryhill*, No. 3:17-CV-01260-M-BH, 2018 WL 4568808, at *14 (N.D. Tex. Sept. 24, 2018) ("*Stone* error does not mandate automatic reversal and remand, however; application of harmless error analysis is appropriate in cases where the ALJ proceeds past step two in the sequential evaluation process. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (applying harmless error analysis where the ALJ failed to cite *Stone* at step two but proceeded to steps four and five of the sequential evaluation process) . . . ."); *Dunham v. Berryhill*, No. H-17-2641, 2018 WL 6574838, at *5 (S.D. Tex. Nov. 21, 2018) ("Under the sequential analysis framework, error at step two rarely constitutes reversible error, where, as here, the ALJ conducts the remaining steps of the five-step sequential analysis. *Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) . . . . Had the ALJ found Dunham's mental impairments to be severe, she would still have proceeded to the RFC analysis and reached the same conclusion."). The Court finds the latter line of cases persuasive. A harmless

error exists when it is "inconceivable" that a different outcome would be reached without the error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Watts v. Berryhill*, 5-17-CV-00192-RBF, 2018 WL 4623666, at *6 (W.D. Tex. Sept. 26, 2018) ("'In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.'").

Here, while finding that Plaintiff did not have a severe mental impairment, the ALJ did find, at step two, that Plaintiff had severe physical impairments of degenerative disc disease of the lumbar spine and osteoarthritis. (R. 22–24). Therefore, the ALJ was required to proceed past step two of the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). Accordingly, no different outcome would have occurred at step two, absent the ALJ's error.

The ALJ determined that Plaintiff was not disabled at step four, concluding that she was capable of performing her past relevant work as a cashier. (R. 30–31). Before proceeding to step four, the ALJ assessed Plaintiff's RFC. (R. 25–30). The ALJ stated "[a]s required by SSR 96-8p, the [RFC] has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." (R. 25). Thus, the ALJ was required to, and did, consider Plaintiff's medically determinable mental impairments of depression and anxiety. (R. 25–30). Further, Plaintiff, in her argument relating to her second assignment of error–that the RFC finding is not supported by substantial evidence–concedes that the ALJ was required to consider all medically determinable impairments, not just those that are severe. (Pl.'s Br., ECF No. 20, at 5). Significantly, relating to that argument, Plaintiff only raises issues with the ALJ's RFC finding relating to physical limitations and does not mention limitations from her mental impairments. *Id.* at 5–10.

In assessing Plaintiff's RFC, the ALJ gave considerable attention to the medical findings and opinions related to Plaintiff's mental impairments, including medical and opinion evidence from a medical consultative examination, psychological consultative examination, and two state psychological experts. (R. 27–30). Plaintiff raises no error as to the ALJ's treatment of this evidence when assessing her RFC. And while Plaintiff summarily states that "[t]he ALJ [ ] failed to apply the correct severity standard to Plaintiff's depression and anxiety and subsequently failed to include mental restrictions in the RFC finding," (Pl.'s Br., ECF No. 20, at 3), Plaintiff makes no argument that the ALJ's failure to find her mental impairments severe caused the ALJ to err in her RFC assessment as to those impairments. For the reasons stated by the ALJ in her written decision and after a review of the record, the Court finds that the ALJ's RFC determination relating to Plaintiff's mental impairment is supported by substantial evidence.

Because the ALJ's error at step two would not have resulted in a different assessment of the RFC related to Plaintiff's mental impairments, the Court finds that it is inconceivable that the outcome at step four would have been different had the ALJ applied the correct legal standard for Plaintiff's mental impairments at step two.[2] Accordingly, such error is harmless and remand is not warranted on this basis.

---

[2] Although the ALJ did not consider Plaintiff's mental impairments at step three, the Court does not find that this failure would render the ALJ's error at step two prejudicial. At step three, the ALJ considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at § 404.1520(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.* The Listing of Impairments in Appendix 1 describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, a claimant is automatically entitled to benefits if her impairment(s) meets the duration requirement and meets or equals the criteria of one of the listed impairments. 20 C.F.R. § 404.1520(d). Because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary," the medical criteria of the Listings are set at "a higher level of severity" than the statutory disability standard. *Zebley*, 493 U.S. at 532. Here, because the ALJ's finding that Plaintiff's mental impairments did not impose limitations that would prevent her from performing her past relevant work as a cashier, she necessarily found that Plaintiff's mental impairments in combination with her physical impairments do not make her disabled under the statutory standard. Therefore, because the Court finds substantial evidence supports this finding, any error

E. The ALJ's Residual Functional Capacity Finding Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because: (1) the ALJ failed to give proper consideration to the opinions of Plaintiff's treating physicians; (2) the ALJ failed to develop the facts by not requesting further clarification from Plaintiff's treating physicians; and (3) the ALJ did not consider the record in its entirety but rather selectively chose the evidence that supported her RFC finding. (Pl.'s Br., ECF No. 20, at 6–10). In response, the Commissioner asserts that evidence in the record supports the ALJ's determination as to the weight assigned to the opinions of the two treating physicians; that the ALJ had no duty under the Regulations to re-contact the treating physicians; and that the limitations set forth in the RFC show that the ALJ considered the entire record and did not selectively choose only the evidence that supports her RFC finding. (Comm'r's Br., ECF No. 23, at 8–17).

Pursuant to 20 C.F.R. § 404.1527(b), in determining whether a claimant is disabled, medical opinions are considered "together with the rest of the relevant evidence" received. A treating source's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at § 404.1527(c)(2). When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) in determining what weight to give the opinions and provides "good reasons" for the weight given. *Id.* "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the

---

the ALJ may have made at step three by not considering Plaintiff's mental impairments against medical criteria imposing "a higher level of severity" than the statutory disability standard is harmless.

treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[3] *Newton*, 209 F.3d at 453 (emphasis in original).

These factors include, *inter alia*, the length, frequency, nature, and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the medical source is familiar with the other information in the claimant's case record. *Id.* at § 404.1527(c). Still, at the administrative law judge level, the ALJ is responsible for assessing the RFC, an administrative finding that is reserved to the Commissioner and not a medical source. 20 C.F.R. §§ 404.1527(d) & 404.1546(c).

Here, the ALJ did not give controlling weight to the medical opinions provided by two treating physicians and did not perform a detailed analysis of the § 404.1527(c)(2) criteria. Plaintiff argues it is significant that the ALJ did not perform this analysis because there is "no treating physician opinion of record that contradicts the opinions of [Plaintiff's treating physicians] Dr. Gonzales [sic] and Dr. Hernandez." (Pl.'s Br., ECF No. 20, at 7). Plaintiff notes specifically that the opinions of the consultative examining physician found no restrictions based on only one examination and x-rays. *Id.*

The Court notes, however, as set forth in detail *infra*, that the opinions of the two treating physicians are not entirely consistent with each other. *Compare e.g.*, (R. 508) (Plaintiff can lift less than ten pounds occasionally) *with* (R. 516) (Plaintiff can lift twenty pounds occasionally and ten pounds frequently). The record in this case includes three opinions from physicians who have

---

[3] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2) of § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. § 404.1527 (effective Mar. 27, 2017).

examined or treated Plaintiff, all of whom provide differing opinions to varying degrees. Furthermore, as discussed *infra*, treatment records provide objective medical findings that do not entirely support any one of these opinions entirely. *See e.g.*, (R. 27) (discussing findings of 5/5 or 4-5/5 strength in both upper and lower extremities). Therefore, per *Newton*, the ALJ was not required to perform a "detailed analysis of the treating physician's views," under the factors set forth in 20 C.F.R. § 404.1527(c).

The opinions provided by Dr. Rogelio Gonzalez, a family medicine practitioner, and Dr. Javier Solis Hernandez, an orthopedic surgeon and traumatologist, are submitted on standard forms that provide separate sections relating to Plaintiff's limitations, if any, in the following categories: exertional, postural, manipulative, visual/communicative,[4] and environmental. Relating to Plaintiff's exertional limitations, Dr. Gonzalez opined that Plaintiff could lift less than ten pounds only occasionally and could stand or walk less than two hours in an eight-hour workday. (R. 508). Dr. Gonzalez also opined that Plaintiff's impairments affected her sitting and limited her ability to push and/or pull in her upper and lower extremities, but he did not further elaborate on these limitations. (R. 509).

Dr. Hernandez opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, could stand or walk less than two hours in an eight-hour workday, and could sit less than six hours in an eight-hour workday. (R. 516–17). Dr. Hernandez also opined that Plaintiff's ability to push and/or pull was limited only in her lower extremities but did not elaborate further. (R. 517). Dr. Onyema Amakiri, a physician who conducted a consultative examination, opined that Plaintiff had no limitations carrying, lifting, moving about, standing, or sitting. (R. 374).

---

[4] None of the opinions referenced herein indicate that Plaintiff had visual or communicative limitations. (R. 510, 518, 374).

The ALJ reviewed Plaintiff's treatment records that included physical examination findings of 5/5 or 4-5/5 strength/motor in her upper and lower extremities and normal gait. (R. 27 (citing R. 412, 426, 479, 567)). The ALJ determined an RFC of light work including a finding that Plaintiff can stand and/or walk about six hours in an eight-hour work day; sit about six hours in an eight-hour workday; and lift and carry twenty pounds occasionally and ten pounds frequently. (R. 25).

Regarding Plaintiff's postural limitations, Dr. Gonzalez opined that Plaintiff could occasionally climb, balance, and kneel, but never crouch, crawl or stoop (R. 509), while Dr. Hernandez opined that Plaintiff could do all of these activities frequently, except Plaintiff could balance only occasionally. (R. 517). Dr. Amakiri did not provide an opinion as to these activities specifically but generally found no limitations with "moving about." (R. 374). The ALJ noted in her review of the treatment records and other evidence that there were findings of 5/5 or 4-5/5 strength in the upper and lower extremities, but there were also findings of limitation of motion in Plaintiff's spine, a positive result on straight leg raise testing on both legs, and difficulty with hopping and squatting. (R. 27 (citing R. 373, 426, 479, 567)). In her RFC assessment, the ALJ included limitations that Plaintiff "can occasionally climb ramps and stairs, but she can never climb ropes, ladders, or scaffolds," and Plaintiff can "occasionally kneel, stoop, and crouch." (R. 25).

Dr. Gonzalez opined that Plaintiff had manipulative limitations and was limited to occasionally handling, fingering, and feeling with her hands (R. 510), while Dr. Hernandez opined that Plaintiff had no limitations with these functions. (R. 518). Dr. Amakiri also opined that Plaintiff had no limitations handling objects. (R. 374). The ALJ noted findings in the medical evidence of no motor deficits, no abnormalities in the digits, no cranial nerve deficits, intrinsic hand strength of 5/5, and normal sensations. (R. 27 (citing R. 373, 412, 479, 576)). In the RFC,

18

the ALJ included the limitations that Plaintiff can frequently handle, finger, and feel with the bilateral hands. (R. 25). Any conflicts in the above-referenced evidence is for the ALJ to resolve, not the courts. *See Spellman*, 1 F.3d at 360. Thus, considering these medical opinion evidence and other medical evidence in the record and discussed by the ALJ, the Court finds substantial evidence supports the ALJ's RFC finding in these respects.

The ALJ gave the opinions of Dr. Gonzalez as to Plaintiff's exertional limitations substantial weight "but only because he completed the forms a mere 3 months after the claimant had undergone lumbar spine surgery," finding the opinions "not unreasonable." (R. 28). As the parties agree, Dr. Gonzalez's opinions were, in fact, provided seven months after Plaintiff's spine surgery.[5] *See* (R. 511, 439-40; Comm'r's Br., ECF No. 23, at 12; Pl.'s Br. ECF No. 20, at 7–8). However, any error in misstating the date of this evidence is harmless. The ALJ clearly only gave substantial weight to these opinions because she believed they were provided shortly after Plaintiff's spine surgery, thus indicating her evaluation of these opinions as consistent with the record only because of the opinions being given "in such close proximity to [Plaintiff's] lumbar spine surgery." (R. 28). The ALJ gave "little to no weight" to Dr. Gonzalez's opinions on Plaintiff's manipulative limitations because she found that "there lacks sufficient objective evidence in the record or in his medical source statement to support these limitations." (R. 28–29). This indicates the ALJ considered the supportability and consistency of Dr. Gonzalez's opinions, as required by 20 C.F.R. § 404.1527(c).[6]

---

[5] The handwritten numerical date of 10/21/15 on the form does look very similar to 6/21/15. However, on close inspection, a review of the record, and considering the parties' agreement, the Court agrees that Dr. Gonzalez's opinion was dated October 21, 2015.

[6] To the extent that the ALJ did not explain the weight she gave to Dr. Gonzalez's opinions on Plaintiff's postural and environmental limitations, the Court notes that any error would be harmless. As for the postural limitations, as discussed *supra*, the ALJ did adopt some of the limitations, and substantial evidence supports the remainder. As for the environmental limitations, Plaintiff's arguments only specifically pertain to the physical limitations contained in her RFC. Furthermore, as the Commissioner points out, such limitations are not incompatible with Plaintiff's past

The ALJ gave little weight to Dr. Hernandez's opinions, finding them internally inconsistent because he opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently but could only stand for two hours out of an eight-hour workday. (R. 29). The ALJ also stated that "the objective evidence Dr. Hernandez relied upon does not adequately support his conclusions, nor is it consistent with the other evidence of record." (R. 29). Thus, the ALJ provided reasons for her assignment of weight that reflect her consideration of the factors in 20 C.F.R. § 404.1527(c). The Court, therefore, finds no error in the ALJ's consideration of, and assignment of weight to, the opinions of Plaintiff's treating physicians, Dr. Gonzalez and Dr. Hernandez. Furthermore, considering the objective medical evidence discussed and cited by the ALJ, and her discussion of the medical opinion evidence of record, as set forth *supra*, the Court finds substantial evidence supports the ALJ's RFC assessment.

Plaintiff also claims that the ALJ "failed to properly develop the record" and "could have requested further clarification from Plaintiff's treating physician." (Pl.'s Br., ECF No. 8–9). However, she makes no specific argument beyond this conclusory statement as to how the ALJ failed in this respect. Finding substantial evidence in the record to support the ALJ's RFC assessment and noting that the Regulations do not require the ALJ to recontact the treating physicians under these circumstances, *see* 20 C.F.R. §§ 404.1520b (2012), the Court finds that the ALJ did not err in this respect.

Finally, although Plaintiff claims that the ALJ erred by not considering the record in its entirety and by "picking and choosing" only the evidence that supports her RFC assessment,

---

relevant work as a cashier. (Comm'r's Br., ECF No. 23, at 11–12) (citing *Dictionary of Occupational Titles*, Occupational Code 211.462-010 Cashier II, 1991 WL 671840 [hereinafter *DOT*, Occupational Code Cashier II]). The Court also notes that the postural limitations are likewise not implicated by Plaintiff's past relevant work as a cashier. *See DOT*, Occupational Code 211.462-010 Cashier II, 1991 WL 671840. Accordingly, including these limitations would not preclude Plaintiff from performing her past relevant work as a cashier, and therefore, any error is harmless.

Plaintiff provides only one citation to medical evidence dated just before her spine surgery, but provides no argument or analysis as to how this evidence refutes or supports the RFC assessment or any of the opinion evidence considered by the ALJ. (Pl.'s Br., ECF No. 20, at 8). Moreover, the ALJ included in her discussion of Plaintiff's medical history exactly the information cited by Plaintiff, but the ALJ also considered the medical findings before and after Plaintiff's spine surgery, which, as discussed *supra*, supports her RFC finding. (R. 26–28). The Court has already concluded that the ALJ did not err in her treatment of the treating physicians' opinions and that the RFC is supported by substantial evidence. Accordingly, the Court finds that the ALJ likewise did not err in this respect.

### III.    CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this __29th__ day of March, 2019.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE